UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GEORGE HENRY AIKEN, III,

      Plaintiff,

v.                                    Case No. 8:14-cv-1921-T-33EAJ

UNITED STATES OF AMERICA,
OPTION CARE ENTERPRISES, INC.,
and BONNIE L. BRUCK-MEIGGS,

      Defendants.

_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Option Care Enterprises, Inc.'s (d/b/a Walgreens Infusion and Respiratory Services) Motion to Dismiss for Failure to Comply with Florida Medical Malpractice Act and Presuit Requirements (Doc. # 11), which was filed on September 2, 2014.  Plaintiff George Henry Aiken, III filed a response in opposition to the Motion on September 12, 2014. (Doc. # 14).  For the reasons that follow, the Motion is denied.  However, after finding that Aiken failed to comply with the statutory presuit notice requirements of Fla. Stat. § 766.106(3), the Court stays this action as to Option Care until October 30, 2014.

## I.   **Background**

Aiken received treatment for a systemic infection at the Emergency Department of the James A. Haley Veteran's Hospital in September and October of 2012. (Doc. # 1 at ¶¶ 6.1-6.17).

In addition to treatment at the hospital, Aiken was prescribed home antibiotic therapy, including "administrating of Gentamicin and the taking of serial blood draws for laboratory testing." (<u>Id.</u> at ¶ 6.5).

The James A. Haley Veteran's Hospital contracted with Defendant Option Care to provide infusion services "including the intravenous administration of antibiotics to George Aiken, the taking of blood samples, and the monitoring of blood laboratory results for markers indicative of decreased renal function associated with the administration of Gentamicin." (<u>Id.</u> at ¶ 6.14). Aiken alleges "employees, agents, servants and/or representatives of Defendant Option Care, including Defendant [Bonnie L. Bruck-] Meiggs, were responsible for monitoring the blood laboratory readings for George Aiken." (<u>Id.</u> at ¶ 6.15).

According to Aiken, Meiggs and other Option Care agents failed to appropriately respond to "critical laboratory markers indicative of decreased renal function associated with the administration of Gentamicin." (<u>Id.</u> at ¶ 6.16). Aiken lost his balance on October 10, 2012, and was admitted for treatment at the Emergency Department of the James A. Haley Veteran's Hospital on October 11, 2012. (<u>Id.</u> at ¶¶ 6.11-6.12). During this hospital admission, Aiken was diagnosed with

2

"gentamicin induced ataxia, oscillopsia and acute renal failure." (<u>Id.</u> at ¶ 6.12). On November 28, 2012, "as a direct and proximate result of Gentamicin induced ataxia and oscillopsia, George Aiken fell causing him to fracture his hip." (<u>Id.</u> at ¶ 6.13).

On August 1, 2014, counsel for Aiken tendered to Option Care a detailed letter titled "Notice of Intent to Initiate Litigation" and indicated that such letter was intended to comply with the requirements of Florida Statute § 766.106. (Doc. # 14-6). Even though the statutory notice period of the aforementioned Florida Statute spans 90 days, Aiken initiated this law suit on August 11, 2014, by filing a Complaint against the United States of America, Option Care, and Bruck-Meiggs. (Doc. # 1). The Court's subject matter jurisdiction is predicated upon Aiken's assertion of a Federal Tort Claims Act cause of action against the United States. (<u>Id.</u> at ¶ 1.6). Although the Complaint does not contain labeled counts, it appears that Aiken sues Bruck-Meiggs for medical malpractice and seeks damages against Option Care, Bruck-Meiggs's employer, based on the theory that Option Care is vicariously liable for Bruck-Meiggs's allegedly tortious conduct.

On September 2, 2014, Option Care filed a Motion to

Dismiss based on Aiken's alleged failure to comply with the Florida Medical Malpractice Act and presuit notice requirements. (Doc. # 11). Aiken has responded to the Motion. (Doc. # 14).

## II.  Analysis

As a condition precedent to filing a medical negligence suit, Florida Statute § 766.106 requires a prospective plaintiff to notify a defendant health care provider of the plaintiff's intent to initiate litigation. "No suit may be filed for a period of 90 days after notice is mailed to any prospective defendant." Fla. Stat. 766.106(3)(a). During the 90-day presuit period, the defendant must conduct an investigation and has the opportunity to reject the plaintiff's claim, make a settlement offer, or offer to arbitrate. Fla. Stat. 766.106(3)(c).

Here, it is not disputed that Aiken sent Option Care a presuit notice letter. However, rather than waiting for a response from Option Care and prior to the expiration of the 90-day notice period, Aiken filed a lawsuit against Option Care only 10 days after furnishing the presuit letter.

Option Care seeks an Order dismissing this action because it was not provided the full 90 day period to investigate the claim. Aiken, on the other hand, suggests that its failure to

4

wait 90 days before filing suit should be excused because Option Care is not a "health care provider" as that term is defined in Florida law, and therefore, Aiken was not technically required to provide any presuit notice and was not required to wait 90 days to file the instant suit.

In <u>Pierrot v. Osceola Mental Health, Inc.</u>, 106 So.3d 491, 493 (Fla. 5th DCA 2013), the court clarified that, for Florida's Medical Malpractice presuit requirements to apply, the claim must be one for medical malpractice and the defendant must be a statutory "health care provider." Here, the face of the Complaint states that this is an action for medical malpractice, therefore, the Court's narrow inquiry is whether Option Care is a "health care provider."

Florida Statute 766.202(4) defines "Health care provider" as follows:

> any hospital, ambulatory surgical center, or mobile surgical facility as defined and licensed under chapter 395; a birth center licensed under chapter 383; any person licensed under chapter 458, chapter 459, chapter 460, chapter 461, chapter 462, chapter 463, part 1 of chapter 464, chapter 466, chapter 467, part XIV of chapter 468, or chapter 486; a clinical lab licensed under chapter 483; a health maintenance organization certified under part 1 of chapter 641; a blood bank; a plasma center; an industrial clinic; a renal dialysis facility; or a professional association partnership, corporation, joint venture, or other association for professional activity by health care providers.

5

Id.

In the Motion to Dismiss, Option Care asserts that it is "A Florida licensed health care provider pursuant to Part 1 of Chapter 646, Florida Statutes." (Doc. # 11 at 1). Option Care further explains in the Motion that it "is a licensed and accredited home health nursing and infusion and respiratory services provider [and] [t]here is no dispute that Option Care is a healthcare provider pursuant to Section 400.464, Florida Statutes." (Id. at 4).

Here, the Complaint appears to allege that Bruck-Meiggs, a pharmacist, was the active tortfeasor, and that Option Care, her employer, is vicariously liable.  While Aiken stresses that pharmacists are not "health care providers" as that term is defined in Fla. Stat. §766.202(4), the court in Puentes v. Tenet Hialeah Healthsystems, 843 So.2d 356, 358 (Fla. 3d DCA 2003), demonstrated that vicariously liable health care providers are entitled to presuit notice - even when the active tortfeasor is not necessarily a statutorily defined health care provider.[1]

---

[1] Option Care agrees with Aiken's position that pharmacists, such as Bruck-Meiggs, are not statutory "health care providers." Specifically, Option Care indicates in its Motion to Dismiss that "the pharmacist's status as a non-health care provider does not obviate the requirement that Plaintiff was obligated to comply with the presuit

In Puentes, a hospital intensive care unit patient suffering from severe food allergies was prescribed a special diet free of certain categories of food. Id. at 357. However, "the dieticians and kitchen employees aggravated her condition by giving her a diet contrary to what her doctor had ordered." Id. at 357-58. The court dismissed the action for failure to comply with the statutory presuit notice requirements and that decision was affirmed on appeal over the claimant's assertion that "the hospital was not entitled to presuit notice because the hospital's dieticians and kitchen employees are not included in the statutory definition of 'health care provider.'" Id. at 357. Thus, the Court rejects Aiken's assertion that the requirements of presuit notice are not triggered because the active tortfeasor is a non-health care provider pharmacist.

In addition, Aiken's argument that Option Care is not entitled to statutory presuit notice is belied by the undisputed fact that Aiken provided Option Care with presuit notice. (Doc. # 14-6). Specifically, on August 1, 2014, counsel for Aiken sent a lengthy and detailed letter to Option

---

requirements of section 766 by allowing a 90 day period for Option Care to investigate the alleged negligence of its pharmacist as well as other potentially liable parties." (Doc. # 11 at 6).

Care titled "Notice of Intent to Initiate Litigation" and stated therein that "This Notice of Intent to Initiate Litigation shall serve to notify you that we intend to initiate litigation against you and this letter is our notice of intent to do so as required by section 766.106, Florida Statutes." (Id. at 2). The same letter also solidifies the conclusion that Aiken's suit is one for medical malpractice, as Aiken's counsel remarks: "We intend to initiate litigation against you for injuries sustained by George Aiken that arise out of the negligent care and treatment of Mr. Aiken arising from your agent's failure to properly monitor, report, and respond to pertinent laboratory markers indicative of decreased renal function and elevated serum trough concentrations of Gentamicin." (Id.)

Option Care's Motion to Dismiss is not predicated upon Aiken's failure to provide presuit notice – as such notice was in fact provided.  Rather, Option Care seeks dismissal of Aiken's claim based on Aiken's failure to wait 90 days to initiate this action.  As noted, presuit notice was provided on August 1, 2014, and Aiken filed suit on August 11, 2014. Florida Statute § 766.106, titled "Notice before filing action for medical negligence; presuit screening period; offers for admission of liability and for arbitration; informal

8

discovery; review" specifies that:

> no suit may be filed for a period of 90 days after
> notice is mailed to any prospective defendant.
> During the 90-day period, the prospective defendant
> or the defendant's insurer or self-insurer shall
> conduct a review as provided in s. 766.203(3) to
> determine the liability of the defendant.  Each
> insurer or self-insurer shall have a procedure for
> the prompt investigation, review, and evaluation of
> claims during the 90-day period.

Fla. Stat. § 766.106(3)(a).  Aiken agrees that "Plaintiff
served [Option Care] with a presuit notice [that] was received
by [Option Care] on August 4, 2014." (Doc. # 14 at 7).

In addition to requiring the plaintiff in a medical
malpractice case to furnish presuit notice to the defendant,
the statute also places numerous obligations on medical
malpractice defendants.  The statute indicates that, during
the 90-day notice period, the defendant must investigate the
claim using one or more of the following procedures: (1)
internal review by a qualified claims adjuster; (2) creation
of a panel comprised of an attorney, a health care provider,
and a claims adjuster; (3) consultation with a medical review
committee; or (4) "any other similar procedure which fairly
and promptly evaluates the pending claim." <u>Id.</u>  This includes
the duty to "investigate the claim in good faith." <u>Id.</u>

In addition, the statute requires the defendant "at or
before the end of the 90 days," to provide the plaintiff with

a response rejecting the claim, making a settlement offer, or making an offer to arbitrate "in which liability is deemed admitted and arbitration will be held only on the issue of damages." Fla. Stat. § 766.106(3)(b).

The Court determines that Option Care was entitled to presuit notice, and that presuit notice was provided. However, Aiken filed this action prior to the expiration of the statutory 90-day period for Option Care to investigate the claim and reject the claim, make a settlement offer, or offer to arbitrate.

Although Option Care seeks dismissal of the action based on Aiken's failure to comply with the statute, the Court finds that the more appropriate remedy is to stay the case as to Option Care for the statutory 90-day period so that Option Care may fulfil its statutory duties and appropriately respond to Aiken's claims. The Florida Supreme Court has emphasized that "when possible, the presuit notice and screening statute should be construed in a manner that favors access to the courts." Patry v. Capps, 633 So. 2d 9, 13 (1994). As presuit notice was furnished on August 1, 2014, the Court stays the case as to Option Care until and including October 30, 2014, so that Option Care may have the opportunity to fully investigate Aiken's claim and reject the claim, make a

10

settlement offer, or offer to arbitrate, and fulfil its statutory obligations with respect to Aiken's claim.  The parties are directed to file a joint status report regarding Aiken's claim against Option Care on or before October 31, 2014.  Unless the Court is notified that a different course of action is required, the Court will return Aiken's claim against Option Care to active status on November 3, 2014.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendant Option Care Enterprises, Inc.'s Motion to Dismiss for Failure to Comply with Florida Medical Malpractice Act and Presuit Requirements (Doc. # 11) is **DENIED.**

(2)   The Court stays the case as to Option Care until and including **OCTOBER 30, 2014.**

(3)   The parties are directed to file a joint status report regarding Aiken's claim against Option Care on or before **OCTOBER 31, 2014.**

(4)   Unless the Court is notified that a different course of action is required, the Court will return Aiken's claim against Option Care to active status on **NOVEMBER 3, 2014.**

**DONE** and **ORDERED** in Tampa, Florida, this <u>22nd</u> day of

11

September, 2014.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to:  All Counsel and Parties of Record